## STURDIVANT vs. FROTHINGHAM.

An officer after extending an execution on real estate, stated in his return that he had caused appraisers to be sworn to appraise such real estate as should be shown them " to satisfy the execution *and all fees and charges*," *held* that it was sufficient, and the levy not voidable, though the magistrate who administered the oath, omitted the words " *all fees and charges*," in his certificate.

Nor is such levy void by reason of the officer's taxing, and causing to be satisfied in the extent, fees unauthorized by law — but the execution debtor may maintain his action against such officer to recover back the amount thus illegally taken.

In extending an execution upon the real estate of one who is *tenant by the curtesy* merely, it is not necessary that it should be by *metes and bounds*, but it may be on the *rents and profits*.

THIS action, which was *assumpsit*, was submitted for the opinion of the Court on the following agreed statement of facts. One *Thomas Beck*, by his will, which was duly proved in Probate Court in the year 1830, devised certain real estate in *Portland*, to his daughter, *Mary Chadbourne*, wife of *James Chadbourne*, in terms which of themselves it was admitted imported a fee. *Mrs. Chadbourne* had children born alive during the coverture. In *December*, 1821, *John Ulrick* recovered judgment against *James Chadbourne*, for $867, which judgment he assigned to the plaintiff, *April* 29, 1822. On this judgment the plaintiff, *July*, 1830, commenced a second suit in the name of *Ulrick*, attaching *Chadbourne's* right, title and interest, in the land in question — this was prosecuted to final judgment, and execution issued, *March* 16, 1831, and was also assigned to the plaintiff. To satisfy this execution, the plaintiff caused it to be levied on the *rents and profits* of the real estate in question — and the proceedings of the officer and appraisers in making the levy were set forth on the back of the execution. The magistrate who administered the oath to the appraisers, certified that they had been sworn, &c. " to appraise such real estate as " should be shown them to satisfy *this execution*." The appraisers' return was as follows. " Having been duly chosen and " sworn faithfully and impartially to appraise such real estate of " the within named *Chadbourne* as should be shown to us by

Sturdivant *v.* Frothingham.

" the within named *Sturdivant*, the assignee of this execution,
" and creditor in interest, to satisfy *this execution and fees and*
" *charges*, have viewed the following described real estate," &c.
" the same being shown to us by said *Sturdivant*, the creditor in
" interest, as the property in which said *James* the debtor has a
" life estate, the same having been devised by *Thomas Beck*,
" late of said *Portland*, deceased, to his daughter *Mary*, wife of
" said *James*. And we have appraised *the whole rents of the*
" *premises*, at two hundred and forty dollars per annum, for the
" purpose of extending this execution thereon, *and have set off*
" *the whole to the said Sturdivant, to hold for the term of six*
" *years and eight months*, from *April* 12, 1831."

The officer in his return on the execution, also stated, that
" he had caused to be chosen and sworn three disinterested and
" discreet men," &c. " to appraise such real estate as should
" be shown to them to satisfy this execution and *all fees and*
" *charges.*"

The taxation of fees by the officer was as follows :

| | |
|---|---|
| " Dollarage and travel, | $13,39 |
| " Justice, | ,20 |
| " Recording Ex. and assignment, | 2,50 |
| " My extra time attending to levy, no-<br>" tifying parties, appraisers, &c. on<br>" two days and sundry other times, | 3,00 |
| " Appraisers' bills, | 22,00 |
| | 41,09" |

*Ulrick*, by his deed of *May* 28, 1830, conveyed all his right,
title and interest to the plaintiff.

On the 12th of *March*, 1830, *James Chadbourne* conveyed
all his interest in the estate, to *Frothingham*, the defendant, in
trust for the wife of said *Chadbourne* and children, for the
avowed object of carrying into effect the will of *Thomas*
*Beck*. The consideration expressed in the deed was one dol-
lar, but nothing was actually paid. *Chadbourne*, at the time
of the conveyance was, and for a long time before had been,
deeply insolvent. The defendant entered into the estate and

received the rents, which are sought to be recovered by the plaintiff in this action.

It was further agreed that the defendant could prove, if in the opinion of the Court the evidence was admissible, to affect the construction of the will, that *Beck* and *Chadbourne* were formerly partners in trade, and were on very friendly terms — but that in the latter part of *Beck's* life there was not a good understanding between them — that *Chadbourne* often spoke of *Deacon Beck* in terms of anger and disrespect, and that the latter disapproved the general conduct of *Chadbourne*.

*Longfellow* and *Greenleaf*, for the defendant, maintained that the levy of the plaintiff was invalid and passed no title in the estate to him, because :

1. The appraisers were not sworn to appraise real estate to satisfy the execution, " *and all fees and charges*," as appears by the certificate of the magistrate who administered the oath. The requirements of the law in regard to this are explicit and imperative. *Maine stat. ch.* 60, *sec.* 27.

2. The levy should have been by *metes and bounds*. It should have been on a portion of the property during the existence of the tenant's estate, and not on *the whole* for a *term of years*. In the case of *Barber v. Root*, 10 *Mass.* 260, nothing but rents and profits could have been set off. It was entirely different from this case.

3. It does not appear in the officer's return as it should, that the estate could not be conveniently divided — this only could authorise a levy on rents and profits. It is not competent for the creditor to say this, it should be said by the officer in his return.

4. Levy void because it included *illegal fees*. An officer has no right to tax for duties other than those authorised by law. The extra time in notifying parties for which $3,00 is taxed, is not recognised by the law as a proper subject of charge. The fees paid to the appraisers also, are much beyond what the law allows.. The statute fixes the compensation at one dollar a day. Here, $22,00 is charged, when the services

were all performed in one day. That for these causes, levy is void, they cited *Beach v. Walker*, 6 *Con. R.* 190.

They further contended for the defendant, that there was evidence enough on the face of the will of *Thomas Beck*, to show that he intended to give the estate to the wife of *James Chadbourne* for *her separate use*, and beyond the control of the husband ; — and to show that technical terms were not essential, they cited *Ballard & ux. v. Taylor & al. Amer. Chan. Dig.* 62, *sec.* 29 ; 3 *Atkins*, 393 ; *Johnson & al. v. Thompson*, 4 *Dessesseur*, 458 ; *Wilson v. Ayer*, 7 *Greenl.* 207 ; 2 *Vernon*, 659, which is commented on in *Reeves' Dom. Rel.* 164 ; 1 *Peere Williams*, 316 ; *Piquet v. Swan*, 4 *Mason's R.* 443 ; *Collins v. Collins*, 2 *Paige's R.* 9 ; 1 *Leigh's R.* 442.

It is also competent for the Court to go out of the will to ascertain the views, feelings and motives of the testator. *Hammond's Chan. Dig.* 697, *sec.* 143 ; *Smith v. Bell*, 6 *Peters' R.* 68. In this case it seems there was a degree of hostility existing between *Beck* and his son-in-law, *Chadbourne*. *Beck* also knew him to be deeply involved in debt, and that anything he might devise him, would be immediately taken by his creditors. *Beck's* object was to provide for his daughter, and therefore released the debt due to him from *Chadbourne*, and devised the estate to his daughter for her separate use — in which case the husband is a mere nominal trustee, and the creditors cannot touch the estate for his debts.

But if *Chadbourne* had an interest in this estate, has he not legally conveyed it ? It does not follow that the deed is *fraudulent*, because *voluntary*. So are the decisions. In this case no fraud is proved, and it is not to be presumed.

*N. Emery* and *Daveis*, for the plaintiff, maintained that the extent of the execution was properly on the *rents and profits ;* and cited *Roberts v. Whiting*, 16 *Mass.* 186 ; *Chapman v. Gray*, 15 *Mass.* 439 ; *Barber v. Root*, 10 *Mass.* 260.

As to the other objections to the levy, it was argued that no decisions could be found to sustain them, and that they were otherwise not well founded, and cited further, *Titcomb v. The*

*U. F. & M. Ins. Co.* 8 *Mass.* 335 ; *Booth v. Booth,* 7 *Con. R.* 350 ; *Huntington v. Winchell,* 8 *Con. R.* 45.

As to the construction and effect of the devise to *Mary Chadbourne,* it was contended that she took an estate in fee,. and that therefore the husband became tenant by the curtesy. 1 *Fonblanque's Eq.* 108. And they maintained that it was not competent for the defendant to introduce extraneous evidence to aid in the construction of the will, there being no latent ambiguity to authorize it.

The conveyance from *Chadbourne* to the defendant was fraudulent, because it was a mere voluntary settlement on the wife. *Roper on Husband & Wife,* 2, 304, *Lond.* ed. — *Woodward v. Briggs,* 7 *Pick. R.* 538 ; *Draper v. Jackson & ux.* 16 *Mass.* 480 ; *Howe v. Ward,* 4 *Greenl.* 208 ; *Clark v. Wentworth,* 6 *Mass.* 259.

In *Wilson v. Ayer,* cited on the other side, the husband received a valuable consideration when he conveyed. Here it was otherwise. *Frothingham* was not a creditor of *Chadbourne,* nor was he a *bona fide* purchaser.

The opinion of the Court was delivered at a subsequent term by

MELLEN C. J. — In this case several questions have been presented for our consideration, and we will consider them in their natural order. The premises, the rents of which are demanded of the defendant, were once the property of *Thomas Beck ;* and the first question is, what was the nature of the estate devised by him to his daughter *Mary,* the present wife of *James Chadbourne.* It is admitted it was a *fee simple,* created by apt words and those usually employed for the purpose, and by no others. But it is urged that the testator intended the estate to be for the separate and exclusive use and benefit of the devisee and her heirs, and that it should not be in any manner under the control of the husband or liable for his debts. It is not necessary for us to decide whether the *parol* evidence, admitted *sub modo,* and relied on by the counsel for the defendant, is admissible, according to the authorities cited, in this action *at law,* to prove the alleged intention ; for if admissible,

it could not produce .the intended effect. It is altogether of a vague and uncertain character, and wholly insufficient to control the unequivocal and direct language of the devise. As the usual language was employed to create a fee, we must presume that if the testator intended an estate of the character suggested by the defendant's counsel, he would have used expressions of his own, such as he might have deemed proper for the purpose; but not having so done, he must be considered as knowing the rights which by law belong to a husband, in respect to real estate given by will or conveyed to her by deed in fee, and not to have designed to impair them. We are therefore of opinion that the estate or right which *Chadbourne*, the husband, had in the premises devised to his wife in fee, was liable to be seised and taken on execution for the debts of *Chadbourne*.

The next question is, whether *Chadbourne's* interest in the premises was transferred to the defendant by the deed of *March* 12, 1830, or to *John Ulrick* by the levy of his execution against *Chadbourne*, made on the 12th of *April*, 1831. The deed being made *before* the levy, if not impeachable and impeached by the plaintiff, who purchased *Ulrick's* interest or estate acquired by the levy, on the 28th of *May*, 1831, operated to pass the estate of *Chadbourne* to the defendant. Our inquiry then is, whether, on the facts before us, the deed is effectually impeached as a *voluntary conveyance,* and so void and wholly inoperative as against the creditors of *Chadbourne*. It appears that *Ulrick* was such a creditor, whose demand had existed for several years prior to the levy; of course his grantee is authorised to contest the validity and effect of the deed and impeach it as a voluntary conveyance and void. But it can be of no use to him to impeach the deed, unless the levy under which he claims, is a legal one. Its legality is denied on several grounds. It is a well settled principle that whatever is necessary to constitute a legal levy of an execution, must appear on *the return* of the officer making the levy. *Williams v. Amory,* 14 *Mass.* 20.

The *first* objection to the levy is, that it appears by the certificate of the magistrate who administered the oath to the appraisers, that they were only sworn to appraise such estate as should be shown to them to satisfy *the execution;* but not *fees*

*and charges.* This objection has no foundation, for the officer in his return says they were sworn to appraise all such estate as should be shown to them to satisfy *the execution and all fees and charges.*

The *second* objection is, that no reason is assigned in the return why the levy was not by *metes* and *bounds*; and that in the absence of such reason, the levy must have. been in the above manner. The 27th *sec.* of *ch.* 60, of the revised statutes, prescribes the mode of extending executions on the *real estate* of a-debtor; it is to be appraised and set off by *metes and bounds*; and the 28th *section* provides that where the· nature of the estate is such that it cannot be so appraised and set off, ihe execution shall be levied upon the *rents* and *profits* of the estate. This is the only provision relating to the subject. The interest which a husband has in an estate of *inheritance* or of *freehold* belonging to his wife, is *real estate,* and falls within the provision of the 27th *section;* why then should not the execution have been levied upon the estate in usual form by metes and bounds, or some reason have been assigned to shew, *on the face of the return,* that it could not have been so levied? If the case before us is an. *exception* from the *general* provision, why should not the return state it to be such, as well as any other fact essential to the correctness of the levy? *Williams v. Amory,* above cited; *Eddy v. Knapp,* 2 *Mass.* 154; *Tate & al. v. Anderson,* 9 *Mass.* 92; *Whitman v. Tyler,* 8 *Mass.* 284. In the case of *Barber v. Root,* 10 *Mass.* 26, *Barber's* wife was owner *in fee* of certain rcal estate, and execution against *him* was levied on the *rents and profits* of the estate, and the levy was decided to be good. *Sewall J.* in giving the opinion of the Court says, " For myself I am satis- " fied upon this point. The interest which the husband has " in the real estate of his wife, that is, in any lands or tene- " ments in which she has an estate of freehold, whether of in- " heritance or for life, is a title to the rents and profits during " the coverture." In *Chapman v. Gray,* 15 *Mass.* 486, the wife was *tenant for life,* and execution against the husband was levied on· the *land and buildings* in common form and seisin delivered; and this the Court considered as a proceeding ac-

cording to law. In *Roberts v. Chapman*, 16 *Mass.* 186, the debtor was *tenant by the curtesy*, and the execution was levied in common form on the land as his freehold. The Court said the levy was correct; and that they were of opinion that the execution in the case of *Barber and Root* might have been levied *either* way; on the *land* or on the *rents* and *profits.* The above case of *Barber v. Root,* is precisely like the present, in respect to the nature of the wife's estate and the mode of levying the execution. In the case of *Chapman v. Gray*, the wife was only *tenant for life*; and in *Roberts v. Chapman*, the debtor himself was tenant *by the curtesy*; but, in *both* instances, the property levied upon was the *real estate* of the debtor; and so was comprehended in the language of the twenty-seventh section, which is a transcript of the provision in the *Commonwealth of Massachusetts* on the same subject. From this view of the practice in *Massachusetts*, and of the construction given to the section by the Supreme Court there in several instances, it would seem that the levy in the case before us would be good and valid. Had there been no construction ever given in that State prior to our separation from it, we should hesitate before pronouncing the levy on *Chadbourne's* estate or interest to be in conformity to the 27th and 28th sections of our statute, and sufficient in law. But we have frequently decided that where a statute of *Massachusetts* had received a judicial construction by the Supreme Court of that State prior to our separation, and the same statute had been reenacted in *this* State, this ought to be considered as a legislative adoption of such construction. We are therefore disposed also to adopt it, and accordingly our opinion is, that the levy must be considered as legally made, notwithstanding *this* objection, and as having transferred all the right or estate which *Chadbourne* had to and in the property levied upon, unless the same had previously passed by his deed to the defendant. The next objection is, that the levy is void in consequence of certain illegal or unauthorised fees and expenses charged by the officer in making it, which have been allowed and satisfied out of the property of *Chadbourne :* and to support this objection the case of *Beach v. Walker*, 6 *Con. R.* 190, has been cited.

That case was tried before the Chief Justice, who decided that, the illegal charges made by the officer rendered the levy void. The correctness of this decision was reserved for the consideration of the whole Court. It was argued in *June* term, 1826 : but in *May* preceding, the Legislature passed a confirmatory act, which the Chief Justice, and one of the Justices, (being a majority of the Court sitting in the cause,) considered as *constitutional* and as healing the defect in the title ; and the verdict was set aside. — In *Booth v. Booth*, 7 *Con. R.* 350, *one* of the objections to the levy was of the same kind as was made in the last case. *Dagget J.* considered that, *if it was a good one*, it was done away by the healing act ; and as to the *other* objections, he was of opinion that they did not defeat the levy, and a majority of the Court concurred : but the Chief Justice and one of the Justices thought the return bad on *other* grounds. In *Huntington v. Winchell*, 8 *Con. Rep.* 45, two executions were levied on lands, the value of which, as appraised, exceeded the amount of the executions ; in one case, *eleven cents ;* in the other, *seven* cents. Both levies were held good. In all these cases we have the opinion of the Chief Justice *only*, as to the correctness of his opinion delivered at the trial on the point in question. We cannot feel satisfied as to the correctness of that decision, notwithstanding the high character and acknowledged learning of the Judge who pronounced it. The debtor, *Chadbourne*, has paid, it is said, more than the officer had a right to charge as fees and expenses, and has thus been injured to a certain amount : admit such to be the fact ; the law gives him a remedy by an action of assumpsit to recover it back again of the officer ; and this will do justice to *Chadbourne ;* but if a levy is to be pronounced totally void for such a reason, an actual loss to the execution creditor, to the amount of thousands, may be the consequence, on account of a surplus, unauthorised charge and satisfaction of one dollar. Why should the innocent creditor be thus compelled to bear the consequences of an act unlawful on the part of the officer. In a case of this kind the Court may look forward to the consequences of such a decision as might probably go to the disturbance or destruction of hundreds of titles which have never

- before been questioned. On the whole, we do not feel author-ised to declare the levy void for the reason which has been urged. Our only remaining inquiry is, whether an estate pass-ed to the defendant by *Chadbourne's* deed. The only consid-eration expressed in the deed is *one dollar*, and there is no proof that even *that* has been paid ; and yet *Chadbourne's* in-terest in the property in question was appraised at $240 per annum. On these facts we cannot sanction the deed as a valid one ; it was nothing more than a voluntary conveyance without any consideration, *Chadbourne* being insolvent at the time, and therefore ineffectual and void as against *Ulrick,* and *Sturdivant* his grantee, according to the case of *How v. Ward,* 4 *Greenl.* 208, and the cases there cited. We are of opinion that the defence has totally failed ; and according to the agreement of the parties there must be,

*Judgment for Plaintiff.*